UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELINA BROWN,

    Plaintiff,

        v.                         Civil Action No. 08-1539 (JDB)

PSI SERVICES, INC.,

    Defendant.

**MEMORANDUM OPINION**

Contending that her former employer, PSI Services, Inc. ("PSI"), fired her because of her gender, Angelina Brown has brought a claim for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Currently before the Court is PSI's motion for summary judgment. For the reasons detailed below, the Court will deny that motion.

**BACKGROUND**[1]

PSI provides caretaking services to mentally disabled individuals. Compl. ¶¶ 6, 8. Brown worked as a residential counselor for PSI, providing supervised in-home care to clients who could not otherwise care for themselves. See Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Docket Entry 9], Ex. 3 (PSI's Resp. to Pl.'s Equal Employment Opportunity Commission ("EEOC") Charge), at R. 100002.

Brown's termination stems from her absence from work on September 6, 2007. Two days earlier, Brown had called her immediate supervisor Monteney Wright to tell him that her

---

[1] The factual background is drawn largely from Brown's evidence, and does not address several factual disputes raised by PSI.

daughter was sick and that she could not work her shift that afternoon. See Def.'s Reply in Supp. of Mot. for Summ. J. ("Def's Reply") [Docket Entry 14], Ex. 4 (Dep. of Angelina Brown ("Brown Dep.")), 46:9-47:21[2]; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [Docket Entry 12], Decl. of Angelina Brown ("Brown Decl."), ¶ 6. Brown's daughter was still sick the next day, but a friend was able to watch her and Brown went to work on September 5. See Brown Decl. at ¶ 7.

Brown's daughter was still ill on September 6, and Brown was unable to find a babysitter. See id. at ¶ 8. She called Wright to report that she could not make her shift that evening. See id. Wright urged Brown to look again for a babysitter, and to call him back in half an hour. See id.; Brown Dep. at 51:4-19. Thirty minutes later, Brown tried to call Wright back -- a number of times -- but he did not pick up, and his phone's voicemail had not yet been set up. See Brown Decl. at ¶ 8; Brown Dep. at 51:20-52:2.

Brown then called a different supervisor, Garnell Wright (no relation), and explained the situation. See Brown Decl. at ¶ 8; Brown Dep. at 52:3-21. She asked Garnell to tell Monteney that she still could not find a babysitter and would not be coming into work that day. See Brown Decl. at ¶ 8; Brown Dep. at 52:3-11. Garnell told her, "okay. If I see him, I'll tell him." Brown Dep. at 52:20-21.

When Brown arrived for her shift on September 7, Monteney told her that "he was about to write [her] up for the day before but decided against it." Brown Decl. at ¶ 10. A week later,

---

[2] Some portions of Brown's deposition are attached as an exhibit to PSI's motion for summary judgment. When citing to Brown's deposition, the Court will refer to the specific page and line numbers of that transcript, without regard to where that portion of the deposition is attached. The Court will do the same for the deposition of Melvin Williams, which is spread between PSI's motion for summary judgment and Brown's opposition to that motion.

on September 14, Brown's Program Director Anton McClure "handed [Brown her] time sheet for September 6, and asked [her] why [she] was claiming sick leave for that day." Id. at ¶ 11. Brown "responded that [her] daughter was sick and [she] called off." Id. McClure told her that Monteney stated "that he had not given [Brown] permission to call off," and that she was being terminated. Id. Brown subsequently brought this claim for gender discrimination.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Thus, the non-moving party cannot rely on mere speculation or compilation of inferences to defeat a motion for summary judgment. See Hutchinson v. Cent. Intelligence Agency, 393 F.3d 226, 229 (D.C. Cir. 2005). Nor can the non-moving party rely on hearsay statements or conclusory statements with

no evidentiary basis to establish a genuine issue of material fact. See Assoc. of Flight Attendants v. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Moreover, a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. See Celotex, 477 U.S. at 322; see also Anderson, 477 U.S. at 252 (summary judgment appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]").

## DISCUSSION

### I. McDonnell Douglas Framework

The Court considers Brown's claims for discrimination under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Id. To show a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory explanation for its actions. See Smith v. Dist. of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005). In asserting a legitimate, non-discriminatory explanation, an employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) (citation omitted).

Where a defendant offers a legitimate, non-discriminatory reason for its actions, "the district court need not -- and should not -- decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Rather, the sole inquiry becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008). In other words, the McDonnell Douglas burden-shifting framework essentially disappears and the only remaining issue is whether the employer discriminated against the employee. In evaluating whether the plaintiff may overcome summary judgment, "the court reviews each of the three relevant categories of evidence -- prima facie, pretext, and any other -- to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination]." Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002)).

## II.    Brown's Gender Discrimination Claim

Here, PSI has offered a legitimate, nondiscriminatory reason for terminating Brown. Specifically, PSI contends that it fired Brown "because she failed to report to work and failed to properly notify her supervisor of her absence." Def.'s Mem. at 13. According to PSI, residential counselors such as Brown must inform both their immediate supervisor and an additional supervisor -- the company's Program Director -- if they are going to be absent. See Def.'s Mem.,

Ex. 5 (Dep. of Melvin Williams ("Williams Dep.")), at 23:9-19.  But, PSI states, Brown never informed her Program Director of her absence.  Further, it insists that while Brown attempted to notify Monteney Wright that she would be out, she failed to actually do so.  Thus, PSI argues, it properly terminated Brown for failing to follow company policy concerning unauthorized absences.  See Defs.' Mem., Ex. 3 (Employee Handbook), at R. 100016 ("Unauthorized absences . . . may also result in disciplinary action, including termination of employment.").

Because PSI has offered a legitimate, nondiscriminatory reason for firing Brown, "the only question is whether [Brown's] evidence creates a material dispute on the ultimate issue of [discrimination] 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Jones, 557 F.3d at 678 (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)) (third alteration in Jones).  Here, Brown has challenged PSI's proffered explanation for her termination.

"One way to discredit an employer's justification is to show that similarly situated employees of a different [gender] received more favorable treatment."  Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d 137, 144 (D.C. Cir. 2008); see also Brady, 520 F.3d at 495 ("Often, the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances.").  To establish that she was similarly situated to a male counterpart, "a female plaintiff must demonstrate that she and the allegedly similarly situated male employee were charged with offenses of comparable seriousness."  Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1998) (internal quotation marks omitted); see also Childs-Pierce v. Util. Workers Union of

Am., 383 F. Supp. 2d 60, 70 (D.D.C. 2005) ("The nature of the offenses committed and the nature of the punishments imposed are the most significant variables in a case alleging discrimination in connection with disciplinary actions."). A female plaintiff "must also demonstrate that all of the relevant aspects of her employment situation were nearly identical to those of the male employee." Holbrook, 196 F.3d at 261 (internal quotation marks omitted). "Generally, a plaintiff must show that the more favorably treated co-workers dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it . . . ." Udoh v. Trade Ctr. Mgmt. Assocs., 479 F. Supp. 2d 60, 64 (D.D.C. 2007).

Here, Brown has demonstrated that she was similarly situated to Chris Coleman, a male employee. Both Brown and Coleman were residential counselors at PSI, and each worked for the same supervisor. See Williams Dep. at 17:6-18. They held the same job, in other words. And they each engaged in nearly identical conduct: on September 2 and 3, 2007 -- just days before Brown's allegedly unauthorized absence -- Chris Coleman "failed to report to work . . . without calling to inform anyone." Def.'s Mem., Ex. 3 (Sept. 10, 2007 Coleman Employee Counseling Form), at R. 100076.[3] PSI did not fire Coleman, however. Instead, several days before it terminated Brown, PSI placed Coleman on disciplinary probation. See Williams Dep. at 40:10-

---

[3] Indeed, Coleman's conduct was arguably worse than Brown's, who at least spoke to a different supervisor in an effort to warn Monteney Wright of her absence. Coleman, on the other hand, failed "to inform anyone" he would not be at work. Id. And Coleman's disciplinary write-up indicates not only that he failed to show up for work two days in a row -- as opposed to Brown's one allegedly unauthorized absence -- but also that he "displayed disorderly conduct while [at] PSI Services" and "displayed verbal aggression and disrespect towards PSI Services." Id.

16.

PSI argues that Brown and Coleman were not similarly situated for two reasons. First, PSI offers that "[b]ecause of the aggressive nature of the clients assigned to Coleman, his level of responsibility was significantly higher than [Brown's]. As a result, he was subject to a different standard." Defs.' Mem. at 15; see Udoh, 479 F. Supp. 2d at 64 (employees must be subject to the same standard to be similarly situated).

This argument fails, at least at the summary judgment stage. See George v. Leavitt, 407 F.3d 405, 414-15 (D.C. Cir. 2005) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury." (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000))). For one, there is no evidence that PSI treats its residential counselors differently -- whether in attendance standards or otherwise -- based on the personalities of their clients. Nor is the evidence clear that Coleman's "level of responsibility" was in fact any different from Brown's: Brown states that "because of the status that [she had] with the clients," on a dozen occasions PSI asked her to cover one of Coleman's violent clients. Brown Dep. at Tr. 70:15-72:14. Moreover, PSI offers no explanation or argument for why the temperament of Coleman's clients is a "relevant aspect" of his employment that would entitle him to a more lenient attendance standard than that of otherwise identical residential counselors.[4] There is thus a genuine and material dispute of fact over whether PSI properly held the two employees to different standards.

---

[4] Indeed, common sense suggests that residential counselors caring for more aggressive clients would be held to stricter attendance standards. As Brown states, "it was easier to replace me with another staff [member] than to send him to [Coleman's client] because [Coleman's client] is kind of violent." Brown Dep. at 70:19-21.

PSI's second attempt to differentiate Coleman from Brown stems from their respective disciplinary histories. See Childs-Pierce, 383 F. Supp. 2d at 75 ("Plaintiff's disciplinary history with defendant is a relevant factor that distinguishes her from the three other . . . employees to whom she attempts to compare herself."). According to PSI, in September 2007 it was unaware of any prior attendance-related offenses by Coleman, whereas Brown had been disciplined for an attendance-related violation in 2006. See Def.'s Reply at 6, 11-12. This, PSI contends, explains their different disciplinary treatment.

The Court disagrees, for two reasons. First, Brown has presented evidence that PSI did know that Coleman had previous attendance-related offenses when it placed him on disciplinary probation. Specifically, Brown "recalls there were at least 7 or 8 occasions over the spring and summer months of 2007 where Mr. Coleman did not call in or report an absence but did not show for his shift. On each of these occasions, I was asked by my House Manager Mary Kimborough to cover Mr. Coleman's client, along with the client I was assigned, because Mr. Coleman was a no call no show. Ms. Kimborough informed me that Mr. Coleman had not called in on these occasions . . . ." Brown Decl. ¶ 12; see also Pl.'s Opp'n, Decl. of Adedayo Adewole ("Adewole Decl."), ¶ 4 ("On each of those occasions when I was asked to wait [until Coleman appeared for his shift], Mr. Coleman did not show up, and according to Mrs. Kimborough, had not called in to say that he would not be in.").[5] Indeed, PSI noted on Coleman's September 2007

---

[5] PSI contends that this evidence, derived from Kimborough's statements, is inadmissible hearsay. See Def.'s Mem. at 16; Def.'s Reply at 8. But "statement[s] by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," are admissible as statements by a party-opponent. See Fed. R. Evid. 801(d)(2)(D). PSI does not explain why Kimborough's statements fail this standard. Indeed, her comments relate directly to PSI's business and thus appear to fall within the hearsay

(continued...)

discipline report that his absences constituted a "pattern of conduct." Sept. 10, 2007 Coleman Employee Counseling Form, at R. 100076. There is a material dispute of fact, then, over whether PSI knew of Coleman's allegedly similar discriminatory history when it terminated Brown.

The second reason that PSI cannot differentiate Brown from Coleman based on their respective disciplinary histories is that PSI represented to the EEOC that Brown "was terminated for attendance violations that occurred <u>after</u> the appointment of [her] new supervisor" in August 2007, and specifically noted that her termination was not "based on absences prior to the supervisor's appointment." <u>See</u> Def.'s Mem., Ex. 3 (Def.'s Response to EEOC Charge) at R. 100009 (emphasis added). PSI now suggests that Brown's past discipline "also informed [its] termination decision." Def.'s Mem. at 17. But given PSI's statements to the EEOC, the Court cannot conclude on summary judgment that Brown's prior behavior is a legitimate basis on which to differentiate her from Coleman.[6]

"Usually, proffering 'evidence from which a jury could find that [the employer's] stated reasons . . . were pretextual . . . will be enough to get a plaintiff's claim to a jury.'" <u>George</u>, 407 F.3d at 413 (quoting <u>Carpenter v. Fannie Mae</u>, 165 F.3d 69, 72 (D.C. Cir. 1999) (alteration and

---

[5](...continued)
exemption. <u>See</u> <u>Swanson v. Leggett & Platt</u>, 154 F.3d 730, 733 (7th Cir. 1998) ("[I]t is not an abuse of discretion to treat a warning by a terminated employee's supervisor about the attitudes, intentions and/or policy of the decision maker who fired him as an admission of a party opponent." (internal quotation marks omitted)). Accordingly, the Court will not exclude this evidence at this time.

[6] That PSI subsequently terminated Coleman following additional unauthorized absences after September 2007, <u>see</u> Def.'s Mem., Ex. 3 (Nov. 14, 2007 Coleman Employee Counseling Form), at R. 100075, also does not alter the Court's conclusion. Whatever PSI's later decision, there still exists a material dispute of fact over whether PSI treated Coleman differently from Brown by not firing him when it terminated Brown.

ellipses in original)); see also Childs-Pierce, 383 F. Supp. 2d at 70 ("Evidence demonstrating that similarly situated employees outside of plaintiff's protected class were treated more favorably is sufficient to establish an inference of discrimination."). Here, Brown has offered evidence that, days before she failed to notify her supervisor of an absence -- conduct for which she was terminated -- PSI placed a similarly situated male employee on probation for similar and arguably more egregious conduct. If it accepts that evidence, a reasonable jury could conclude that PSI terminated Brown not for her behavior, but for her gender.[7]

## CONCLUSION

For the reasons explained above, the Court will deny PSI's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: September 13, 2010

---

[7] Because PSI's differential treatment of Coleman and Brown defeats summary judgment, the Court need not address Brown's additional argument that she did, in fact, comply with PSI's procedures for reporting absences.